## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

## COLUMBIA DIVISION

HECTOR M. VACA,        )
                                   )
                Plaintiff,    )     Civil Action No. 3:04-23423-CMC-BM
                                   )
v.                               )
                                   )     **REPORT AND RECOMMENDATION**
SEARS ROEBUCK COMPANY,    )
d/b/a SEARS,              )
                                   )
                Defendant.    )
_____)

        This action was filed by the Plaintiff, a former employee of the Defendant Sears

Roebuck Company, asserting several claims relating to his employment with the Defendant.  The

Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on September

5, 2007.  After receiving an extension of time to respond, Plaintiff filed a memorandum in

opposition to the Defendant's motion on September 28, 2007, following which the Defendant filed

a reply memorandum on October 15, 2007.[1]  Defendant's motion is now before the Court for

---

[1]Defendant actually has two reply memoranda in the record, one of which was filed on
September 5, 2007 (Court Docket No. 104), and one of which was filed on October 15, 2007
(Court Docket No. 120).  The undersigned assumes this is due to a docketing error, since the
document shown as being filed September 5, 2007 addresses issues raised in Plaintiff's response
(continued...)



disposition.[2]

## **Background and Evidence**[3]

Plaintiff is a Hispanic male, originally from Equador, whose primary language is Spanish. Plaintiff began working in the Defendant's automotive department in 1991 and remained employed by the Defendant until September 30, 2003. At the time of Plaintiff's discharge, he was a Level III Automotive Technician at the Defendant's Columbiana Mall Auto Center. Plaintiff was one of several employees who worked primarily on wheel alignments, two of the other employees being Scott Jones (Caucasian) and Amos Hall (African-American).

During the time period relevant to Plaintiff's claims, Toussaint Snowden was the Manager at the Sears Automotive Center, and Tim Swaim was Assistant Manager. Snowden Deposition, p. 11; Swaim Deposition I, p. 26. The General Manager for the Defendant's Columbiana Mall store was Betty Greer, while the District Auto Center Manager (which included the Columbiana Mall store) was Andrew Hoit. Greer Affidavit, ¶ 2; Hoit Affidavit, ¶ 1.

While Plaintiff could generally understand work orders, since he was not fluent in English he had difficulty communicating with customers and other employees. Nevertheless, he was generally considered to be a good employee. Snowden Deposition, pp. 49, 53, 66; Greer Deposition,

---

[1](...continued)
memorandum, which was not filed until September 28, 2007.

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]The facts and evidence are considered and discussed hereinabove in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).



p. 34; Counts Deposition, p. 18.[4]  Even so, Plaintiff attests that Snowden harassed him about not being able to speak English, and that Snowden as well as fellow employees Ronnie Jones and George Williams (both African-Americans) called him "fag" and "queer".  Plaintiff's Affidavit, ¶ 10.[5]  However, Plaintiff never complained to Swaim, Greer or anyone else in management about this alleged treatment.  Plaintiff's Affidavit, ¶ 10; Greer Deposition, p. 19.[6]

On September 19, 2003, Hoit reported to Greer that Plaintiff had attempted to improperly charge a customer for a wheel alignment on September 17, 2003.  Greer Affidavit, ¶ 5.  This customer was Alison Gregerson.  Greer Deposition, pp. 84-85; see Gregerson Deposition, pp.

---

[4]Nicholas Counts is a former Assistant Manager at the Automotive Center. In addition to deposition testimony, Plaintiff has also submitted what he purports to be affidavits from both Counts and Swaim, as well as an affidavit from himself.  However, none of these "affidavits" are dated, and Defendant argues that the notary statements at the bottom of each is not sufficient to make them "sworn" statements for purposes of consideration as evidence. See  Nissho-Iwai American Corp. v. Kline, 845 F.2d 1300, 1305-1306 (5th Cir. 1988); Flowers v. Abex Corp., 580 F.Supp. 1230, 1234, n. 2 (N.D. Ill. 1984).  Because of these issues, there is a question as to whether these "affidavits" can be considered as evidence in this case.  Further, even if they are determined to be competent evidence, to the extent any statements in these affidavits contradicts deposition testimony given by the affiants, the deposition testimony controls. Bickenstaff v. Vassar College, 196 F.3d 435, 455 (2d cir. 1999) ["It is beyond cavil that a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that...contradicts the affiant's previous deposition testimony."] (internal quotations and citations omitted); Kennedy v. Allied Mutual Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991) [party cannot create issue of fact by contradicting prior deposition testimony].

[5]Plaintiff attests that he was diagnosed as HIV positive in 1998, and that he started being called "fag" and "queer" at work after he began receiving treatment for this condition in 1999. Plaintiff's Affidavit, at ¶ 10.

[6]Plaintiff does argue in his brief that he had "sought management intervention through Swaim many times, complaining of his treatment by Snowden", but that Swaim would simply refer Plaintiff's complaints back to Snowden, citing to page 19 of Swaim's deposition.  However, that page of Swaim's deposition does not contain any testimony indicating that Plaintiff ever complained to Swaim about Snowden or anyone else harassing him because he could not speak English or because he was being referred to as a "fag" or "queer".   Rather, Plaintiff's complaint to Swaim was that Snowden was sending him too much warranty work, which prevented him from receiving a commission.  Swaim Deposition, pp. 19-21.



4-7. A few months earlier, Plaintiff had also performed work on a vehicle owned by Kimberly Repp, who apparently was a friend of Hoit. Repp did not feel this work had been done properly, which angered Hoit. <u>Snowden Deposition</u>, pp. 27-31. Snowden testified that the Repp work was the reason Plaintiff was terminated, because his work had embarrassed Hoit in front of his friends. <u>Id</u>. Conversely, while Greer attests that Hoit had discussed this previous incident with her, she states that Plaintiff was actually terminated for the Gregerson incident. <u>Greer Affidavit</u>, ¶¶ 6-10; <u>Greer Deposition</u>, pp. 84-85. Greer attests that, after concluding her investigation, she determined that Plaintiff had acted improperly and made the decision to discharge Plaintiff from his employment. <u>Greer Affidavit</u>, ¶ 10. Plaintiff denies that he did anything wrong when working on the Gregerson vehicle. <u>Plaintiff's Affidavit</u>, ¶¶ 8-9.

      On June 4, 2004, Plaintiff filed a charge of discrimination with the South Carolina Human Affairs Commission (SCHAC) alleging that he had been discriminated against on the basis of his national origin and a disability.[7] <u>Plaintiff's Deposition, Defendant's Exhibit 5</u>. In this administrative charge, Plaintiff claimed that he was harassed and intimidated by Snowden, including being cursed and yelled at and called derogatory names, because of his disability and because he did not speak English well, and that he was also given menial jobs and had his hours lowered so that he could not earn a full salary. In addition to this harassment, Plaintiff alleges that he was terminated because of his national origin and because of his disability. <u>See also</u> <u>Plaintiff's Deposition,</u>

---

[7]It is undisputed that South Carolina is a deferral state, and that the Plaintiff could therefore file his administrative claim with SCHAC. <u>Nelson v. Lockheed Missiles and Space Co.</u>, No. 97-1430, 1997 WL 727609 at **1 n. 1 (4th Cir. November 24, 1997); <u>E.E.O.C. v. Hansa Products, Inc.</u>, 844 F.2d 191, 192 n. 1 (4th Cir. 1988) (quoting 42 U.S.C. § 2000e-5(e)) ["A deferral state is one 'which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice.'"]; <u>see</u> S.C.Code Ann. § 1-13-90, <u>et. seq.</u>, as amended.



<u>Defendant's Exhibits 6 & 7</u>.

After receiving a right to sue letter, Plaintiff filed this action in United States District Court on December 29, 2004 alleging that he had been discriminated against by the Defendant on the basis of his national origin and disability by being paid less than similarly situated non-Hispanic employees and by receiving lower raises than similarly situated employees in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, <u>et</u>. <u>seq.</u>; 42 U.S.C. § 1981, and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, <u>et</u>. <u>seq.</u> (first cause of action); that he was subjected to a hostile work environment because of his national origin and illness in violation of Title VII and § 1981 (second cause of action); that he was retaliated against for opposing discriminatory practices by being paid less than other similarly situated employees, offered lower raises, and by being harassed and terminated without just cause in violation of § 1981 and Title VII (third cause of action); that the Defendant breached his employment contract (fourth cause of action); and that he was wrongfully discharged in violation of state law (fifth cause of action).

<u>**Discussion**</u>

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, in order to avoid summary judgment the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.



# I.

## (Scope of Plaintiff's Claims)

**Issue of Withdrawn Claims.**  The Defendant originally filed a motion for summary judgment in this case on February 6, 2006.  In a memorandum filed in opposition to that motion on March 17, 2006, Plaintiff withdrew all of his causes of action except for his claims being asserted under Title VII. See Court Document No. 61, at p. 21.  However, due to a dispute over the Plaintiff's deposition, the Defendant's original motion for summary judgment was removed from the docket, without prejudice with leave to re-file following resolution of that dispute.

After the Plaintiff had been re-deposed, the Defendant re-filed its motion for summary judgment on September 5, 2007.  However, in his response to Defendant's updated motion, Plaintiff discusses all of his claims on the merits except for his claim for breach of contract, which he asks the Court to deny jurisdiction over "thus affording Plaintiff the ability to bring a separate state claim should Defendant produce a valid handbook as requested."

Defendant argues that, pursuant to Plaintiff's statement in his earlier brief, all of his claims should be deemed withdrawn except for his Title VII claims.  However, since the parties were allowed by the Court to fully re-brief and re-submit their arguments with respect to summary judgment in this case, the undersigned does not believe that Plaintiff's other claims should be deemed abandoned.  Both sides were allowed to completely re-brief and re-state their claims and arguments in their new briefs, and were specifically not bound by the arguments or evidence set forth in their previous briefs.  Therefore, the undersigned has considered and discussed all of Plaintiff's claims hereinbelow, except for his breach of contract claim. With regard to Plaintiff's breach of contract claim, it is recommended that this claim (Plaintiff's fourth cause of action) be

6



dismissed without prejudice.

    **Claims asserted under § 1981.** In his Complaint, Plaintiff asserts his national origin discrimination claims not just under Title VII, but under 42 U.S.C. § 1981 as well. However, while discrimination claims based on national origin are cognizable under Title VII; see E.E.O.C. v. United Air Lines, Inc., 287 F.3d 643, 650 (7th Cir. 2002); Fortino v. Quasar Co., 950 F.2d 389, 391-392 (7th Cir. 1991) ["Title VII forbids discrimination on the basis of national origin...."]; Section 1981 only provides a cause of action based on race. Defendant correctly notes in its brief that, while federal courts have uniformly held that § 1981 pertains to claims of private racial discrimination, claims of discrimination based on national origin are not within the scope of § 1981. See St. Francis College v. Al-Khazraji, 481 U.S. 604, 606-613 (1987); Duane v. Government Employees Ins. Co., 784 F.Supp. 1209, 1216 (D.Md. 1992), aff'd, 37 F.3d 1036 (4th Cir. 1994) [§ 1981 "does not provide protection for individuals discriminated against on the basis of national origin"]; Saad v. The Baltimore Life Ins. Co., 47 Fed.Appx. 228, 232 (4th Cir. 2002).

    Plaintiff has provided no cogent response to Defendant's argument and authority that § 1981 does not give rise to a cause of action for national origin discrimination. Therefore, the Defendant is entitled to summary judgment on Plaintiff's national origin discrimination claims to the extent they are asserted under § 1981.

    **Claims asserted under the ADA.** Plaintiff's ADA claims are premised on the fact that he is HIV positive. Defendant argues that, under the facts of this case, Plaintiff's HIV status does not constitute a "disability" under the ADA, nor is Plaintiff otherwise qualified to bring an ADA claim in this Court. The undersigned is constrained to agree.

    In order to assert a claim under the ADA, Plaintiff must present evidence to show



that 1) he is a qualified person with a disability under the ADA, and 2) that the defendant is subject to suit under that statute.[8] 42 U.S.C. § 12112(a); see Pollard v. High's of Baltimore, Inc., 281 F.3d 462, 467 (4th Cir. 2002), cert. denied, 123 S.Ct. 122 (2002); Tyndall v. National Education Centers, 31 F.3d 209, 212 (4th Cir. 1994); Hooven-Lewis v. Caldera, 249 F.3d 259, 268 (4th Cir. 2001) [same standards apply to ADA and Rehabilitation Act].[9]  In order to be a "qualified person with a disability under the ADA", Plaintiff must meet three criteria: first, he must have a "disability"; second, he  must have been "qualified" for the job in question; and third, the adverse employment action alleged must constitute unlawful "discrimination" based on his disability. E.E.O.C. v. Stowe-Pharr Mills, Inc., 216 F.3d 373, 377 (4th Cir. 2000); Baird ex rel. Baird v. Rose, 192 F.3d 462, 467 (4th Cir. 1999); Tyndall, 31 F.3d at 212.

The term "disability" is defined as a) a physical or mental impairment that substantially limits one or more of the major life activities[10] of an individual, b) a record of such impairment, or c) being regarded as having such an impairment. 42 U.S.C. § 12102(2); Pollard, 281 F.3d at 467.  Hence, the initial issue before this Court is whether Plaintiff has presented sufficient

---

[8]The Defendant does not contest that it is subject to suit under the ADA.

[9]While some cited cases deal with the Rehabilitation Act rather than the ADA, the standards are the same.  Smaw v. Commonwealth of Virginia Department of State Police, 862 F.Supp. 1469, 1474 (E.D.Va. 1994) ["By design, the ADA standards mirror those of the Rehabilitation Act in this case....The emergence of the ADA does not create a new avenue for claims in the area of disability discrimination; rather, the ADA incorporates the existing language and standards of the Rehabilitation Act  in this area."]; Hooven-Lewis v. Caldera, 249 F.3d at 268.

[10]A "major life activity" is defined as a basic activity that an average person can perform with little or no difficulty, such as walking, hearing, speaking, learning, breathing, standing, lifting, seeing and working.  Appendix to 29 C.F.R. § 1630.2(i); see Bruncko v. Mercy Hosp., 260 F.3d 939, 941 (8th Cir. 2001); Dutcher v. Ingalls Shipbuilding, 53 F.3d 723-727, n. 7 (5th Cir. 1995);  Gupton v. Virginia, 14 F.3d 203, 205 (4th Cir. 1994), cert. denied, 513 U.S. 810 (1994) ( Rehabilitation Act).



evidence to create a genuine issue of fact as to whether his alleged impairment (being HIV positive) substantially limits a major life activity, whether there is any record of such a substantially limiting impairment, or whether the Defendant regarded him as having such an impairment.

The major life activity at issue here is the life activity of working, and there is no evidence before the Court to support a finding that Plaintiff's HIV status prevented him from engaging in the actual performance of this major life activity.  Indeed, Plaintiff does not even argue that his HIV positive status prevented him from performing his job. See Plaintiff's Deposition, at pp. 65-70; see also Raquel Vaca Deposition, at pp. 24-26; Raquel H. Vaca Deposition, at pp. 17, 22, 24-25; McCaw Deposition, at p. 34.  Rather,  Plaintiff argues that simply being HIV positive, even if asymptomatic, is a "disability" under the ADA, citing to the case of Bragdon v. Abbott, 524 U.S. 624 (1998).  However, while the Plaintiff in Bragdon was asymptomatic, the major life activity at issue in that case was the life activity of "pregnancy".   The Supreme Court held that the ability to reproduce is a major life activity, and that being HIV positive, even if asymptomatic, substantially limits an individual's ability to reproduce, thereby constituting a "disability" under the ADA. Bragdon, 524 U.S. at 625-626, 637-639.[11]  In contrast, Plaintiff's HIV positive status in the case at bar did not affect the major life activity at issue in this case, his ability to work.

Nevertheless, HIV is deemed to be an impairment from the moment of infection;

---

[11]Plaintiff has made no argument in this case that he has a "disability" under the ADA because he is restricted in his ability to reproduce. Cf. Blanks v. Southwestern Bell Communications, No. 99-1722, 2001 WL 1636359 at * 4 (N.D.Tex. Dec. 18, 2001); see also Mock v. University of Pittsburgh, No. 04-314, 2007 WL 2253602 at * 17 (W.D.Pa. Aug. 3, 2007) [Discussing the United States Supreme Court's opinions eschewing "reliance on specific impairments without regard to the effect that those impairments have on the major life activities of a particular individual"]; Arrendo v. Gulf Bend Center, No. 06-1580, 2007 WL 1004051 at & 6-7 (S.D.Tex. Mar. 30, 2007).



Bragdon, 524 U.S. at 637; and while the court in Bragdon specifically declined to address the question of whether being HIV positive is itself a per se disability under the ADA; Bragdon, 524 U.S. at 642; a persuasive argument can be made that an employer's mere knowledge of an employee's HIV positive status, even if asymptomatic, entitles the employee to protection under the ADA due to the negative connotations associated with being HIV positive, and the possibility that employers may discriminate against HIV positive employees based on that fact alone. *Cf.* Bragdon, 524 U.S. at 656 (Ginsburg, concurring); see also, United States v. Happy Time Day Care Ctr., 6 F.Supp.2d 1073, 1078-1079 (W.D.Wis. 1998) [discussing controversy over whether HIV should be a per se disability]; Lederer v. BP Products North America, No. 04-9664, 2006 WL 3486787 at *3-4 (S.D.N.Y. Nov. 20, 2006) ["Although the ADA requires a case-by-case inquiry into whether HIV infection substantially limits a major life activity of each individual Plaintiff, the Supreme Court's holding that reproduction is a major life activity...is dispositive of most cases.]. However, even if this Court were to conclude that HIV is a per se disability, Plaintiff's ADA claim would still fail because there is no evidence whatsoever that Snowden, Greer, or any other supervisor or even fellow employee knew of or was aware of Plaintiff's HIV status. See also, e.g. MacDonald v. Delta Airlines, Inc., 94 F.3d 1437, 1443 (10th Cir. 1996), citing Dutcher, 53 F.3d at 727 [holding that the Plaintiff "might have qualified as disabled under the ADA if he could  have provided sufficient summary judgment evidence that he was regarded by [the Defendant] as having an impairment that substantially limited a major life activity, whether he actually had such an impairment or not."]; Rhodes v. F.D.I.C., 257 F.3d 373, 391 (4th Cir. 2001).  Plaintiff testified that he never told anyone at Sears that the was HIV positive.  Plaintiff's Deposition, p. 51.  Further, Greer, who was the decisionmaker in this case, had no knowledge of Plaintiff's HIV status; Greer Affidavit, ¶ 16; nor

10



did anyone else at Sears have any knowledge of Plaintiff's medical condition. <u>See generally</u>, <u>Hoit Affidavit</u>, ¶ 11; <u>Rodriguez Affidavit</u>, ¶ 14; <u>Brown Affidavit</u>, ¶ 17; <u>Jones Affidavit</u>, ¶ 15; <u>Williams Affidavit</u>, ¶ 16; <u>Snowden Deposition</u>, p. 67.

While Plaintiff states in his affidavit that he filed several workers compensation claims during the time he worked for the Defendant in which his HIV positive status was set forth in his medical records; <u>see Plaintiff's Affidavit</u>, at ¶ 10; Plaintiff has presented no evidence [assuming this assertion to be true for purposes of summary judgment][12] to show that any decisionmaker, or indeed anyone else involved in this case, had any access to these medical records, ever saw these medical records, or was ever told anything about these medical records. <u>Id</u>; <u>See also Plaintiff's Deposition</u>, p. 38; <u>Greer Affidavit</u>, ¶ 17. Plaintiff's own general and conclusory claims and allegations that Snowden or other employees of the Defendant may have known he was HIV positive are insufficient to constitute "evidence" for purposes of defeating Defendant's summary judgment motion. <u>House v. New Castle County</u>, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; <u>Beale v. Hardy</u>, 769 F.2d 213, 214 (4th Cir. 1985) [A party opposing summary judgment "cannot create a general issue of fact through mere speculation or by the building of one inference upon another."]. Therefore, even assuming Plaintiff's HIV positive status constitutes a <u>per se</u> disability, Plaintiff has failed to establish that the alleged adverse employment action was based on that disability. <u>EEOC</u>, 216 F.3d at 377 [noting requirement that alleged adverse employment action must have been taken "because of [Plaintiff's] disability"]; <u>Baird</u>, 192 F.3d at 467; <u>Lederer</u>, 2006 WL 3486787, at *3 [To prevail in ADA case,

---

[12]No evidence, such as copies of any workers compensation claims or attached medical records, have been provided to the Court to support this assertion.



Plaintiff must show that "he suffered [an] adverse employment action because of his disability"].

The Defendant is entitled to dismissal of any claims being asserted under the ADA.

**Retaliation claim.**  Plaintiff alleges in his third cause of action that he engaged in protected activity by complaining to his managers and to the head of Human Resources for the Defendant about the discriminatory conduct and practices he was being subjected to, and that as a result the Defendant unlawfully retaliated against him in violation of Title VII by "paying him less than other similarly situated employees, by offering him lower raises than similarly situated employees despite his exceptional job performance, by harassing and by terminating him without just cause; all because of the opposition to Defendant's unlawful employment and billing practices as alleged....".  Complaint, ¶ 43.  Defendant argues that this cause of action is subject to dismissal because Plaintiff never filed an EEOC charge alleging retaliation.  The undersigned is again constrained to agree with Defendant's argument.

In order to bring a lawsuit in United States District Court under Title VII, a plaintiff is first required to properly exhaust his or her administrative remedies.  Specifically, Title VII requires that a claimant file a charge of discrimination with the EEOC within one hundred and eighty (180) days of the alleged discriminatory act or acts, or, if the alleged discrimination occurred in a "deferral state", within three hundred (300) days from the alleged discriminatory act or acts if the claimant initially institutes proceedings with the appropriate state agency, or within thirty (30) days of the state agency's termination of its proceedings, whichever is earlier.  See 42 U.S.C. § 2000e-5(e).  Since South Carolina is a deferral state, SCHAC is the appropriate state agency for purposes of initiating state proceedings. See, note 7, supra.  Therefore, Plaintiff had three hundred (300) days from (at the latest) September 30, 2003 (the date of his discharge) to file an



administrative charge asserting his retaliation claim, and a failure by him to do so bars him from pursuing a Title VII lawsuit on that claim in this Court. <u>United Black Firefighters of Norfolk v. Hirst</u>, 604 F.2d 844, 847 (4th Cir. 1979); <u>Mickel v. South Carolina State Employment Serv.</u>, 377 F.2d 239, 242 (4th Cir. 1967).

It is undisputed that the administrative charge Plaintiff filed with SCHAC does not assert a claim for retaliation. <u>Plaintiff's Deposition, Defendant's Exhibit 5</u>. Plaintiff states in his affidavit that he reported the Defendant's conduct and treatment of him through an interpreter, which included his claim that his termination was based on his inability to speak English and his opposition to Defendant's billing practices, and that the charging document was then prepared by Ron Frierson of the South Carolina Department of Human Affairs and sent to him for his signature. Plaintiff attests that it was his understanding that the charging document stated that his termination was related to the conduct alleged. <u>Plaintiff's Affidavit</u>, ¶ 12. However, Plaintiff has provided no affidavit from Frierson or any other competent evidence to support his assertion that he intended to assert a retaliation claim in his administrative charge. Further, the evidence reflects that Plaintiff went over and reviewed the charge itself with his counsel prior to signing it, with Plaintiff's counsel even notarizing the charging document. <u>Plaintiff's Deposition, Defendant's Exhibit 5</u>; <u>Attachment B to Defendant's Reply filed Sept. 5, 2007</u> ["Counsel's Letter dated June 4, 2004 to Ron Frierson - Enclosing three copies of Change of Discrimination.]

The undersigned can find no basis in these undisputed facts to allow Plaintiff to now change, or add a new, theory of liability for which the Defendant was never placed on notice through the administrative charge and that was never investigated by the administrative agency. <u>See Marshall v. Federal Exp. Corp.</u>, 130 F.3d 1095, 1098 (D.C.Cir. 1997) ["[A]llowing a complaint to



encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to timely file the EEOC charge."] (quoting Schnellbaecher v. Baskin Clothing Co., 887 F.2d 124, 127 (7th Cir. 1989)). Therefore, as the record and evidence before this Court shows that Plaintiff failed to administratively exhaust his retaliation claim, he is procedurally barred from bringing that claim in this Court, and his third cause of action for retaliation should be dismissed.  Smith v. First Union National Bank, 202 F.3d 234, 247 (4th Cir. 2000) [EEOC charge "defines the scope of [a plaintiff's] subsequent right to institute a civil suit"]; Sloop v. Memorial Mission Hosp., Inc., 198 F.3d 147, 148 (4th Cir. 1999) [a Title VII claimant must first exhaust administrative remedies with regard to their claim before filing the claim in federal court]; Chacko v. Patuxent Institution, 429 F.3d 505, 509 (4th Cir. 2005); Polsby v. Chase, 970 F.2d 1360, 1363 (4th Cir. 1992) ["Procedural requirements...for gaining access to the ...courts are not to be disregarded by courts out of a vague sympathy for particular litigants"], vacated on other grounds, 113 S.Ct. 1940 (1993), citing Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984); see also Plaintiff's Deposition, p. 83; Plowman v. Cheney, 714 F.Supp. 196, 200-201 (E.D.Va. 1989) [Reliance on the actions of counsel does not excuse a Plaintiff's failure to file a proper administrative complaint, nor does counsel's failure to do the research or make the appropriate inquiries]; Wagher v. Guy's Foods, 768 F.Supp. 321, 325-326 (D.Kan. 1991) [An attorney is presumed to have a working knowledge of Title VII's filing requirements], aff'd, 990 F.2d 726 (2d Cir. 1993), cert. denied, 510 U.S. 947 (1993); Polsby, 970 F.2d at 1363-1364 [Title VII Defendant does not bear the responsibility when Plaintiff receives mistaken advice or representation from counsel].



## II.

### (Pay Claim)

In his first cause of action, Plaintiff alleges that the Defendant "practiced unlawful discrimination based on Plaintiff's national origin[13] and disability[14] by paying him less than similarly situated non-Hispanic employees and by offering him lower raises than similarly situated employees, despite his exceptional job performance." Complaint, at ¶ 21.  Pursuant to the previous findings herein, supra, this claim has only been considered by the undersigned under Title VII, which prohibits employment discrimination on the basis of national origin. A claim under Title VII requires proof of intentional discrimination, either by direct evidence or by the structured procedures set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See also Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981).

**Direct evidence.** Plaintiff initially argues that he has direct evidence of discrimination.  Direct evidence is "[e]vidence, which if believed, proves existence of fact in issue

---

[13]In what can only be deemed confusing testimony, Plaintiff stated during his deposition that he was not claiming that he had been discriminated against based on his national origin, but that he was instead discriminated against based on his race. Plaintiff's Deposition, p. 28. However, that was not the claim asserted in his SCHAC administrative change; see Plaintiff's Deposition, Defendant's Exhibit 5; nor is it the claim asserted in his Complaint. See Complaint, First and Second Causes of Action.  To the extent he is attempting to do so, Plaintiff cannot change his theory of liability at this late date. Marshall, 130 F.3d at 1098.

[14]The undersigned has already found that Plaintiff's HIV status did not qualify him as "disabled" for purposes of an ADA claim based on the facts presented.  While it is conceivable that Plaintiff's allegation that he was called a "fag" or "queer" by Snowden or others could be construed instead as a claim that he was discriminated against on the basis of a perceived sexual orientation, this is not yet a claim recognized under Title VII. Womsley v. Lab Corp., No. 07-43, 2007 WL 2819632, at *1 (N.D.W.Va.  Sept. 26, 2007) ["[D]iscrimination on the basis of sexual orientation is not actionable under Title VII"], citing Wrightson v. Pizza Hut of America, Inc., 99 F.3d 138, 143 (4th Cir.  1993); Etsitty v. Utah Transit Authority, 502 F.3d 1215, 1222 (10th Cir. 2007).  Therefore, any such claim could not be considered.

15



without inference or presumption." <u>Black's Law Dictionary</u>, 460 (6th Ed. 1990) (citing <u>State v. McClure</u>, 504 S.W. 2d 664, 668 (Mo. Ct. App. 1974)).  In other words, direct evidence is evidence that, by itself, proves the discrimination.  <u>See</u> <u>Williams v. General Motors Corp.</u>, 656 F.2d 120, 130 (5th Cir. 1981), <u>cert.</u> <u>denied</u> 455 U.S. 943 (1982).  This is in contrast to circumstantial evidence, which is evidence from which discrimination may be inferred.  Plaintiff argues that Swaim's statement in his affidavit that the difficulty people had communicating with Plaintiff because of his poor English was "a factor in the decision" to terminate him is direct evidence of discrimination. <u>See</u> <u>Swaim Affidavit</u>, ¶ 2.  Swaim also states that he does "not agree that [the Defendant's] decision to terminate [Plaintiff] was not influenced by his difficulties in communicating in English." <u>Id</u>, at ¶ 3.

However, even assuming this "affidavit" is competent evidence for consideration by the Court; <u>see</u> n. 4, <u>supra</u>; these statements are not direct evidence of discrimination, as they only set forth Swaim's own personal belief that Plaintiff's poor English skills were a factor in his termination.  There is no evidence before the Court to show that Swaim himself actually played any role in Plaintiff's termination, nor is there any evidence before the Court to show that any decisionmaker concerning Plaintiff's termination ever told Swaim that the reason Plaintiff was being terminated was because he could not speak English. Finally, Plaintiff's claim in his first cause of action is that he was discriminated against on the basis of his *pay* because of his national origin,  not that his national origin had anything to do with his termination.[15]   Therefore, lacking any direct

---

[15]Plaintiff did include allegations concerning his discharge under his *retaliation* claim; however, that claim is subject to dismissal for failure to exhaust administrative remedies. <u>See</u>, discussion, <u>supra</u>.  Plaintiff has not asserted a separate *discrimination* claim based on his termination in his Complaint. <u>Patrick v. Chertoff</u>, No. 01-152, 2005 WL 1827876, at * 4

(continued...)



evidence of pay discrimination, Plaintiff must pursue his claim under the <u>McDonnell Douglas</u> indirect evidence proof scheme.[16]

**McDonnell Douglas analysis.** The United States Supreme Court set forth a three-part analysis for reviewing discrimination cases in <u>McDonnell Douglas</u>. <u>First</u>, Plaintiff must establish a prima facie case of discrimination.  Once a prima facie case has been established, a rebuttable presumption is created that the employer unlawfully discriminated against the Plaintiff.  <u>Second</u>, once this presumption has been established, the burden of production shifts to the employer to show a legitimate, non-discriminatory reason for its actions.  <u>Third</u>, if the employer shows a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the employer's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the employer were really based on Plaintiff's national origin.  <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802-805; <u>Texas Dep't of Community Affairs</u>, 450 U.S. at 252-256; <u>Conkwright v. Westinghouse Elec. Corp.</u>, 933 F.2d 231, 234-235 (4th Cir. 1991).

---

[15](...continued)
(N.D.Texas July 27, 2005) ["discrimination and retaliation are separate claims, and must be treated accordingly"].

[16]Pursuant to recent court rulings, consideration of Plaintiff's claim under the so-called "mixed-motive" analysis is also now allowed, even though Plaintiff has presented only circumstantial, or in-direct, evidence of discrimination.  Previously, consideration of a claim under the mixed-motive analysis was only proper in direct evidence cases. <u>See</u> <u>Hill v. Lockheed Martin</u>, 354 F.3d 277, 284-285 (4th Cir. 2004); <u>Mereish v. Walker</u>, 359 F.3d 330, 339-340 (4th Cir. 2004); *cf.* <u>Taylor v. Virginia Union Univ.</u>, 193 F.3d 219, 232 (4th Cir. 1999) [en banc].  However, neither party has argued for consideration of Plaintiff's claim under a "mixed-motive" analysis. Therefore, the undersigned has only evaluated Plaintiff's claim using the <u>McDonnell Douglas</u> analysis.  <u>See</u> <u>Hopes v. Roche</u>, No. 04-2963, 2005 WL 1812820 at * 6 n. 2 (D.Md. Aug. 2, 2005) (citing <u>Nagy v. Baltimore Life Ins. Co.</u>, 49 F.Supp.2d 822, 836 n. 13 (D.Md. 1999) [declining to engage in "mixed-motive" analysis where parties have not argued a mixed-motive theory.]).



Despite these shifting burdens of production, however, Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout.  Texas Dep't of Community Affairs, 450 U.S. at 252-253; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

In order to establish a prima facie case of discrimination in compensation, Plaintiff must show that (1) he is a member of a protected class; (2) he was paid less than an employee outside of that class; and (3) the higher paid employee was performing a substantially similar job. Brinkley-Obu v. Hughes Training, Inc., 36 F.3d at 343; Kess v. Municipal Employees Credit Union of Baltimore, Inc., 319 F.Supp.2d 637, 644 (D.Md. 2004); Gbenoba v. Montgomery County Dep't of Health & Human Servs., 209 F.Supp.2d 572, 579 (D.Md. 2002). It is undisputed that Plaintiff is a member of a protected class (Hispanic Male originally of Ecuadoran nationality).  With respect to the remaining two prongs of Plaintiff's prima facie case, however, Defendant argues that Plaintiff has failed to submit any evidence to show that he was paid less than employees outside of his protected class who were performing substantially similar jobs.[17]

---

[17]Defendant also argues that Plaintiff's pay discrimination claim should be dismissed because he never filed an EEOC charge alleging that he was discriminated against based on his national origin by being paid less or by receiving lower raises.  The undersigned does not agree. A review of Plaintiff's administrative charge shows that Plaintiff alleged that he was required to perform menial jobs so that he could not earn a full salary and that his hours were lowered resulting in his receiving less pay, while similarly situated employees outside of his protected class were not treated in such a fashion.  Hence, while Plaintiff's administrative charge does not specifically say anything about Plaintiff receiving lower raises, it clearly does allege that he was being discriminated against in his pay because of his national origin.

Based on these allegations, and in an effort to give Plaintiff's claims the fullest consideration possible, the undersigned has addressed Plaintiff's claim in his first cause of action; i.e., that the Defendant discriminated against him on the basis of his national origin "by paying him less than similarly situated non-Hispanic employees and by offering him lower raises than similarly situated employees....".  Plaintiff's Complaint, at ¶ 21; Terrell v. U.S. Pipe & Foundry Co., 644 F.2d 1112, 1123 (4th Cir. 1981) [liberal construction given to EEOC complaints]; Pickney v. Am. Dis. Tel. Co., 568 F.Supp. 687, 690 (D.Ark. 1983) [liberal construction rule must

(continued...)

18



In support of this claim, Plaintiff states in his affidavit that he was paid an hourly rate plus a 22% commission for alignment work.  However, while he would still receive his hourly rate when he performed warranty work, he would not receive a commission.  Plaintiff attests that the amount of commission work he performed had a large impact on his salary, but that after Snowden and Swaim because his managers in July 2003 they consistently reduced his commission work by sending him warranty work for alignment while the non-warranty work went to the other alignment technicians.[18]  Plaintiff attests that Snowden and Swaim also required him to do cleaning work, which was non-commission work, and arranged his work schedule so that he would work fewer hours than the other alignment technicians.  Plaintiff's Affidavit, ¶ 5; see also ¶ 10.

Defendant argues that Plaintiff has presented no evidence to support these claims, and the undersigned agrees. Plaintiff simply alleges in a conclusory fashion that Swaim and Snowden reduced his commission work by sending him warranty alignments while they referred the non-warranty work to the other alignment technicians, and that he was scheduled to work fewer hours than the other alignment technicians. Plaintiff has provided no evidence to show the actual amount of hours he worked versus the amount of hours the other alignment technicians worked, how

---

[17](...continued)
be freely employed to ferret out pertinent facts forming basis of employee's EEOC complaint]; but see also, Moran v. Lockheed Martin Energy Systems, Inc., 50 Fed.Appx. 705 (6th Cir. 2002) [liberal construction not required when represented by counsel].

[18]Plaintiff does not identify who all of these alignment technicians were in his affidavit, although he does refer to Ronnie Jones and George Williams as being alignment technicians, both of whom he says are African-Americans.  In her affidavit, Betty Greer attests that there were only two other employees who worked primarily on wheel alignments: Scott Jones, a Caucasian American, and Amos Hall, an African-American.  Greer Affidavit, ¶ 13. In any event, for purposes of Plaintiff's claim, none of these individuals are alleged to be members of Plaintiff's protected class.

19



much warranty work versus non-warranty work was performed by each, or how much Plaintiff was paid versus what the other alignment technicians were paid.  Such general and conclusory allegations, without any supporting evidence, are not sufficient to survive summary judgment. House, 824 F.Supp. at 485 [Plaintiff's conclusory allegations insufficient to maintain claim]; Beale, 769 F.2d at 214 [A party opposing summary judgment "cannot create a general issue of fact through mere speculation or by the building of one inference upon another."].

    Further, in contrast to the general and conclusory claims made by the Plaintiff, the Defendant has provided specifics concerning the salaries made and hours worked by the technicians Defendant contends were performing the alignment work at the auto center, none of which has been disputed by the Plaintiff.  Specifically, Greer attests that in 2001 Plaintiff earned $36,973.64 in gross pay, while Jones earned only $31,362.70 and Hall, who did not begin his employment until September 2001, earned only $6,351.92.  In 2002, Plaintiff earned $38,029.31, while Jones earned $29,665.90 and Hall earned $28,630.45.  Finally, between January and September of 2003, when Plaintiff was terminated, Plaintiff earned $29,123.08, while Jones earned $20,974.20 and Hall earned $26,017.80.  See Greer Affidavit, ¶ 14.  Greer also attests that from July 2003 through September 2003 (the period immediately preceding Plaintiff's discharge), Plaintiff worked 451.9 regular hours, while Jones worked only 416.6 regular hours and Hall worked 434.23 regular hours. Greer Affidavit, ¶ 15.  Further undercutting his claim, Plaintiff himself testified that he had no idea what the other alignment technicians were being paid.  Plaintiff also testified that he is not complaining about any raises received or not received (contradicting his own complaint), but was only complaining about commissions.  Plaintiff's Deposition, pp. 31-34.

    In sum, Plaintiff has simply presented no evidence to support the general and



conclusory claims in his Complaint and in his affidavit that he was discriminated against in the pay he received because of his national origin. Cook v. CSK Transp. Corp., 988 F.2d 507, 513 (4th Cir. 1993) ["[U]nsupported allegations do not establish a case of...discrimination...."]. At summary judgment, the non-moving party has an obligation to present evidence to save his or her allegations from the status of speculation, and must respond with specific facts showing a genuine issue for trial. Rule 56, Fed.R.Civ.P.; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Gairola v. Virginia Dep't of General Servs., 753 F.2d 1281, 1288, n.4 (4th Cir. 1985). Plaintiff has failed to do so, and since he has provided no evidence sufficient to give rise to a genuine issue of fact as to whether he was paid less than employees outside of his protected class, he has failed to establish his Title VII prima facie case. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985); Felty v. Graves-Humphreys, Co., 818 F.2d 1126, 1128 (4th Cir. 1987); Beale, 769 F.2d at 214 [A party opposing summary judgment "cannot create a general issue of fact through mere speculation or by the building of one inference upon another."].

Therefore, Plaintiff's first cause of action for national origin discrimination based on his pay should be dismissed.

### III.

### (Hostile Work Environment Claim)

Plaintiff alleges in his second cause of action that his managers and other employees of the Defendant harassed him based on his national origin. Complaint, ¶ 30. To establish a hostile work environment claim, Plaintiff must present evidence to prove the following elements: 1) he was subjected to unwelcome conduct in a work related setting; 2) the conduct complained of was based on his national origin; 3) the conduct was sufficiently severe or pervasive to alter his condition of



employment and to create an abusive work environment; and  4) the conduct is imputable on some factual basis to his employer. <u>Ocheltree v. Scollon Productions, Inc.</u>, 308 F.3d 351, 356 (4th Cir. 2002), <u>rehearing</u> <u>en</u> <u>banc</u>, 335 F.3d 325 (4th Cir. 2003), <u>cert. denied</u>, 124 S.Ct. 1406 (2004); <u>Spicer v. Com.of Va. Dep't of Corrections</u>, 66 F.3d 705, 710 (4th Cir. 1995); <u>Brown v. Perry</u>, 184 F.3d 388, 393 (4th Cir. 1999).

Defendant contends that Plaintiff has not submitted sufficient evidence to support his hostile work environment claim,  arguing that Plaintiff testified to only two incidents concerning this alleged harassment, one of which occurred in 1998 when two co-workers referred to him as a "pato maricon"[19], and a second incident which occurred in June or July of 2003 when Snowden allegedly took Plaintiff by the arm (after he complained about doing warranty work) and stated that "he was the boss, that [Plaintiff] had to do what he wanted, that he was Sears, and that if [Plaintiff] did not do what he said, there's the door."  <u>See</u> <u>Plaintiff's Deposition</u>, pp. 38-39, 54-55.  A review of Plaintiff's deposition shows that he actually testified that there were "about five" people who were calling him "pato maricon", although he only identified George Williams and someone named "Mark" or "Marcus" as two of these individuals.  <u>Plaintiff's Deposition</u>, pp. 38-39.  Plaintiff also testified that Swaim and Snowden would tell him to "speak English"; <u>Plaintiff's Deposition</u>, p. 41; and states in his affidavit that Snowden as well as the Service Manager prior to Snowden, Paul Nelson, yelled and complained to him about his not being able to communicate in English. Plaintiff further states in his affidavit that after Nelson was replaced by Snowden, he "never treated me fairly or courteously and immediately assumed the harassing treatment I had been receiving from Mr. Nelson," although no specifics are provided. <u>See</u> <u>Plaintiff's Affidavit</u>, ¶ 10.  Plaintiff also testified

---

[19]"Homosexual fag". <u>See</u> <u>Plaintiff's Deposition</u>, p. 47.



that two co-employees told him that Snowden "couldn't stand me and that he was going to get rid

of me,"  and alleges that his receiving only warranty work, as  well as the menial jobs he was

assigned, were part of this effort. Plaintiff's Deposition, pp. 53-55.

Considered in the light most favorable to the Plaintiff, this testimony is sufficient for

purposes of summary judgment to show that Plaintiff was subjected to unwelcome conduct in a work

related setting.  However, to the extent Plaintiff is complaining about being called a ""pato maricon"

or its English equivalent, there is no evidence before the Court to show that that conduct (assuming

it occurred) was based on Plaintiff's national origin.  Rather, it is readily apparent from Plaintiff's

own testimony as well as the other evidence submitted in this case that that conduct was based on

his fellow employees' assumption that Plaintiff was homosexual. Plaintiff's Deposition, pp. 36, 38-

39. While obviously offensive, that is not conduct or activity proscribed by Title VII, and therefore

cannot be considered as part of Plaintiff's Title VII hostile work environment claim.  Womsley,

2007 WL 2819632, at *1  ["[D]iscrimination on the basis of sexual orientation is not actionable

under Title VII"];  See Bolden v. PRC, Inc., 43 F.3d 545, 551 (10th Cir. 1994), cert. denied, 516 U.S.

826 (1995) ["general harassment if not [based on a protected criteria] is not actionable"];  Norris v.

City of Anderson, 125 F.Supp.2d 759, 769 (D.S.C. 2000) ["Since Plaintiff's allegation contains no

[conduct prohibited by Title VII], it cannot be used to support his hostile work environment claim"].

As for Plaintiff's claims concerning the treatment he received because he speaks

Spanish, such treatment can constitute discrimination based on national origin in some

circumstances. Brewster v. City of Poughkeepsie, 447 F.Supp.2d 342, 351 (S.D.N.Y. 2006) ["You

may consider language discrimination as some evidence of unlawful discrimination, but language

discrimination alone is not enough.  Plaintiff must introduce additional evidence to tie language



discrimination to her race or national origin."] (citing to jury charge). Defendant argues, however, that Plaintiff's testimony concerning these incidents are simply too few in number, or is otherwise so general and conclusory and even (at least partially) outside of the applicable claims period, to show that any such conduct was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and create a hostile work environment.

With respect to Defendant's argument concerning the timeliness of Plaintiff's allegations, to the extent any of the conduct Plaintiff complains of occurred more than 300 days prior to his filing his administrative charge of discrimination on June 4, 2004; see 42 U.S.C. § 2000e-5(e)(1); hostile work environment claims may, where appropriate, encompass claims that fall outside of the normal 300 day limitations period. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116-118 (2002) ["The timely filing provision only requires that a Title VII Plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period."]. Nevertheless, Plaintiff being criticized or fussed at because of his inability to speak English alone, without any evidence of a discriminatory animus or bias being the cause of this treatment, does not present a Title VII claim. Brewster, 447 F.Supp. 2d at 351; see Cosme v. Salvation Army, 284 F.Supp.2d 229, 239-240 (D.Mass. 2003) [holding that an English-only rule that prevents some employees, like the plaintiff, from exercising a preference to converse in Spanish does not convert the policy into discrimination based on national origin.]; Hopkins v. Baltimore Gas & Electric Co., 77 F.3d 745, 754 (4th Cir. 1996) ["Title VII was not designed to create a federal remedy for all offensive language and conduct in the work place."]; Smith v. Northeastern Illinois University, 388 F.3d 559, 566-567 (7th Cir. 2005) [mere utterances that

24



engender offensive feelings do not provide an automatic basis to find that an actionable hostile work environment exists]. While the evidence before the Court (considered in the light most favorable to the Plaintiff) certainly shows that Snowden and Swaim may have found Plaintiff's inability to speak English frustrating, and that they may even have believed that Plaintiff should be discharged based on this fact, that does not, without more, create an inference that the conduct complained of was based on Plaintiff's national origin. Valasquez v. Goldwater Mem'l Hospital, 80 F.Supp.2d 257, 262 (S.D.N.Y. 2000) [holding that neither Title VII nor common understanding equates national origin with the language that one chooses to speak]; Garcia v. Gloor, 618 F.2d 264, 272 (5th Cir. 1980)[same]. Rather, there must be some evidence from which a discriminatory animus based on Plaintiff's *national origin* can be adduced. Here, when asked at his deposition whether either Snowden or Swaim had ever made any negative comments about his national origin, Plaintiff answered "no". Plaintiff's Deposition, p. 65.[20]

Further, even if any comments directed to the Plaintiff concerning his inability to speak English *were* the result of a discriminatory animus, there is no indication in the record before this Court how often this conduct occurred, which makes Plaintiff's claims problematic. Plaintiff testified specifically only about the one incident in June or July of 2003, when Snowden grabbed him by the arm. Plaintiff's Deposition, pp. 54-55. See Guidry v. Zale Corp., 969 F.Supp. 988, 990 (M.D.La. 1997) [isolated comments do not constitute severe or pervasive conduct]; Cram v. Lamson & Sessions, 49 F.3d 466, 474 (8th Cir. 1995) [sporadic or casual comments are unlikely to support a hostile work environment claim]; Jenkins v. New York State Dep't of Corrections, No. 01-754,

---

[20]Similarly, Plaintiff also testified that neither Hoit nor Greer ever made any negative comments to him about his national origin. Plaintiff's Deposition, pp. 62, 64.



2002 WL 205674 at *6-7 (S.D.N.Y. Feb. 8, 2002) [finding that one-time occurrence of verbal harassment and shove that was devoid of any indicia of race based motive may have caused anxiety or embarrassment, but it did not prevent plaintiff from doing his job and was not an adverse employment action]. Otherwise, he just states generally that Snowden "never treated [him[ fairly", harassed him, and gave him poor work assignments, but does not provide any specifics. Such general and conclusory statements do not constitute "evidence" for purposes of defeating a summary judgment motion. House, 824 F.Supp. at 485. See Causey v. Balog, 162 F.3d 795, 802 (4th Cir. 1998) [conclusory statements, without specific evidentiary support, do not support a claim for discrimination]; Yarnevic v. Brink's Inc., 102 F.3d 753, 757-758 (4th Cir. 1996) [holding that remote inferences and conclusory allegations cannot defeat summary judgment]; Godoy v. Habersham County, No. 04-211, 2006 WL 739369 at *11 (N.D.Ga. Mar. 21, 2006).

Finally, there is no evidence, even assuming that Plaintiff has satisfied the other three elements for his hostile work environment claim, to impute the conduct complained of to the Defendant in this case for purposes of liability. Under the applicable caselaw, if the alleged hostile work environment was created by a supervisor with immediate or successive higher authority over the Plaintiff, the employer Defendant may be subject to vicarious liability. Faragher v. City of Boca Raton, 524 U.S. 775, 778 (1998). It can be assumed that Snowden and/or Swaim would fall into this category for purposes of summary judgment. However, a Defendant can avoid this vicarious liability, if no tangible employment action has been taken, by asserting an affirmative defense to liability or damages subject to proof by a preponderance of the evidence. Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 765 (1998). There is no evidence that either Snowden or Swaim took any



tangible employment action against the Plaintiff.[21]  Therefore, the Defendant is entitled to assert the

affirmative defense provided by Ellerth.

           This defense is comprised of two elements; a) that the employer exercised reasonable

care to prevent and correct promptly any harassing behavior, and b) that the plaintiff employee

unreasonably failed to take advantage of any preventive or corrective opportunities provided by the

employer or to avoid harm otherwise. Ellerth, 524 U.S. at 765. With respect to whether Plaintiff

exercised reasonable care to prevent and correct promptly any harassing behavior, Plaintiff testified

---

    [21]Plaintiff alleges that Swaim and Snowden complained about his inability to speak English, and that they otherwise harassed him by giving him reduced hours and/or menial jobs. Snowden and Swaim's complaints about Plaintiff's inability to speak English are not a tangible employment action under the applicable caselaw. See Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981), cert. denied, 454 U.S. 892 (1981); Ellerth, 524 U.S. 742, 765 [adverse employment action is a significant, tangible employment action, i.e., a significant change in employment status, such as discharge, demotion, or undesirable reassignment]; see also Flaherty v. Gas Research Institute, 31 F.3d 451, 456 (7th Cir. 1994) [a "bruised ego" is not enough]; Naughton v. Sears, Roebuck & Co., No. 02-4761, 2003 WL 360085 at *5 n. 1 (N.D.Ill. 2003)[criticism, including a negative performance review or development plan, does not constitute an adverse employment action]; cf. Faragher, 524 U.S. at 788 [simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment]; Clark County School Dist. v. Breeden, 532 U.S. 268, 270-271 (2001) [same].

    Plaintiff receiving a lower salary or menial job duties that his co-workers did not have to perform could be a tangible employment action. See Crady v. Liberty Nat'l Bank & Trust Co. of Ind., 993 F.2d 132, 136 (7th Cir. 1993)["A materially adverse change might be indicated by... a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation].  However, with respect to the menial jobs Plaintiff complains he was required to perform, he conceded at his deposition that other employees were required to perform these jobs as well. Plaintiff's Deposition, pp. 34-35, 52-53. See also, Brown Affidavit, ¶ 6; Jones Affidavit, ¶ 6; Williams Affidavit, ¶ 6. Further, the undersigned has already found that Plaintiff has presented no evidence to support his general and conclusory allegation that he received less pay or more adverse job assignments than did his co-workers. See discussion, supra. see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) ["Rule 56(c) mandates the entry of summary judgment... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."].



at his deposition that sometime between May and September of 2003 he tried to speak to Hoit and Greer about having to do "mopping and sweeping", but was told that it was up to the manager to make work assignments. <u>Plaintiff's Deposition</u>, pp. 45-46. There is no allegation in this testimony that Plaintiff complained to either Hoit or Greer that he was being harassed based on his national origin. Significantly, Plaintiff also testified that, other than being required to do sweeping and other non-commission jobs (and being called homosexual names, which is not an issue for purposes of Plaintiff's claim), he was not alleging that he had been discriminated against in any other way (thereby not referring to Snowden and Swaim's complaints about his not being able to speak English). <u>Plaintiff's Deposition</u>, p.52. Later in his deposition, Plaintiff again testified that his harassment complaint is based on the "ugly names" he was called (referring to the "pato maricon" and "faggot" comments), and again does not mention anything about any conduct related to his inability to speak English. <u>Plaintiff's Deposition</u>, p. 77.

Plaintiff argues in his brief that Swaim conceded that Plaintiff complained to him about Swaim assigning him warranty work; however, the deposition testimony cited to by the Plaintiff to support this argument does not refer to anything about Plaintiff being harassed due to his national origin. <u>Swaim Deposition I</u>, p. 19. Further, while Snowden testified that Plaintiff complained to Greer about the job assignments he [Snowden] was giving him, again there is no indication in this testimony that Plaintiff's complaints about his job assignments had anything to do with his national origin, or that Plaintiff ever raised this as an issue. <u>Snowden Deposition</u>, p. 68. For her part, Greer attests that Plaintiff never complained to her about being discriminated against on the basis of his national origin; <u>Greer Affidavit</u>, ¶ 18; and Plaintiff does not dispute this assertion. <u>Plaintiff's Deposition</u>, pp. 40-42, 44-45, 51. <u>See</u> <u>also</u> <u>Rodriguez Affidavit</u>, ¶ 19. Therefore, while



the evidence is sufficient for purposes of summary judgment to show that Plaintiff complained about the type of work he was receiving, there is no evidence that Plaintiff exercised reasonable care to prevent and correct promptly any harassing behavior based on his national origin.  Bolden, 43 F.3d at 551 ["general harassment if not [based on a protected criteria] is not actionable"].

As for whether the Defendant exercised reasonable care to prevent and correct promptly any harassing behavior, since there is no evidence Plaintiff ever complained about harassment based on a discriminatory animus, there is consequently no evidence for the Court to consider concerning any efforts by the Defendant to act on any such complaints.  Even so, the evidence reflects that the Defendant did maintain an anti-harassment policy for its stores.  Greer Affidavit, ¶ 21, and Attachment E.  Defendant's exhibit shows that this policy is printed in both English and Spanish, and Greer attests that it is posted in its stores.  Id.  Plaintiff states in his affidavit that he was never provided any documents in English or Spanish that related to the Defendant's anti-harassment or discrimination policy, and that he did not believe that the Defendant had any policies against harassment or discrimination.  Plaintiff's Affidavit, ¶ 3.  However, at his deposition Plaintiff testified (with respect to the anti-discrimination document referred to by Greer in her affidavit), when asked if he recognized that document, as follows:

**Question:** Do you recognize this document, Mr. Vaca?

**Answer:** I don't remember.  I don't know.  I don't remember.

**Question:** You could have seen it when you worked as Sears, but you don't remember. Is that what you are saying?

**Answer:** Something like that.

Plaintiff's Deposition, p. 82; Defendant's Supplemental Exhibit (Court Docket No. 122).

Plaintiff's testimony fails to rebut Greer's sworn statement about the posting of this



anti-discrimination policy.  See  Barrett v. Applied Radiant Energy Corp., 240 F.3d 262, 266 (4th

Cir. 2001)["By providing clear direction as to how to report sexual harassment and by including a

confidentiality and anti-retaliation provision, [employer's] policy was reasonably calculated to

prevent and promptly correct any sexually harassing behavior."].  Plaintiff's testimony also shows

that he knew he could complain to Hoit and Greer about his working conditions, as he testified that

he tried to speak to Hoit and Greer about his job assignments.  However, as previously noted, there

is no indication in Plaintiff's testimony that he ever raised the issue of being discriminated against

based on his national origin in any of these discussions. Plaintiff's Deposition, pp. 45-46, 51;  *cf.*

Shaw v. Auto Zone, Inc., 180 F.3d 806, 813 (7th Cir. 1999) ["[a]n employee's subjective fears of

confrontation, unpleasantness or retaliation do not alleviate the employee's duty under Ellerth to

alert the employer to the allegedly hostile environment."].  Therefore, there is no basis in the

evidence before the Court to impute the conduct complained of to the Defendant for purposes of

liability.

        Plaintiff's second cause of action for hostile work environment should be dismissed.

### IV.

### (State Law Claim for Wrongful Discharge).

        In his fifth and final cause of action, Plaintiff asserts a state law claim for wrongful

discharge in violation of the public policy of South Carolina.  Plaintiff alleges that he was

discharged because he opposed being "subjected to racial slurs and epithets directed at himself for

not speaking English and being HIV positive", as well as for opposing and refusing to engage in the

practice of falsification of billing documents so as to overcharge customers.  See Complaint, ¶¶ 59-

60.  Defendant argues that this cause of action is subject to dismissal because Plaintiff has failed to



establish the substantive elements of this claim, and because his claim for wrongful discharge is premised upon the same allegations made in support of his Title VII claims.

To the extent Plaintiff's wrongful discharge claim is based on his allegation that his discharge was the result of his opposition to the Defendant's allegedly discriminatory policies and practices, the undersigned agrees with the Defendant that this claim must be dismissed. Under South Carolina law, the retaliatory discharge of an at-will employee[22] can constitute a violation of public policy, giving rise to an action in tort for wrongful discharge, where the employer requires an employee to violate the law. Ludwick v. This Minute of Carolina, Inc., 337 S.E.2d 213 (S.C. 1985); see also Lawson v. South Carolina Department of Corrections, 532 S.E.2d 259 (S.C. 2000). However, a Ludwick claim cannot be asserted where there are federal or state statutory remedies available to vindicate the public policies allegedly implicated by a plaintiff's termination. See Heyward v. Monroe, 1998 WL 841494 at *4 (4th Cir. Dec. 7, 1998) ['South Carolina permits an action under public policy exception when an at-will employee is terminated for refusing to violate the law. It has not been extended to circumstances where there is a statutory remedy for employment discrimination....']. Here, Plaintiff has a federal statutory remedy for his retaliatory discharge claim under Title VII. See 42 U.S.C. § 2000e-3(a) [setting forth the standard for a retaliation claim under Title VII]. Therefore, to the extent Plaintiff's public policy tort claim relates to conduct covered by Title VII, the availability of a federal statutory remedy precludes Plaintiff's

---

[22]As previously noted, Plaintiff is seeking dismissal of his breach of contract claim at this time, and Plaintiff does not otherwise seek to maintain that he was not an at-will employee for purposes of this lawsuit.



public policy tort cause of action.[23]  *Cf.* Long v. Newberry Elec. Co-op., Inc., No. 01-36, 2002 WL 1362081 at *6 (S.C.Com.Pl. Dec. 4, 2002) [refusing to find a wrongful discharge in violation of public policy where plaintiff had a statutory remedy but failed to pursue it].

With respect to Plaintiff's claim that he was discharged because he opposed his manager's practice of falsifying billing documents and that he refused to engage in such illegal and immoral practices, Defendant has failed to point to any statutory remedy Plaintiff might have for pursuing his discharge for this reason.  This claim also appears to clearly fall within the parameters of a wrongful discharge cause of action as established by the State Supreme Court in Ludwick; i.e., that Plaintiff was discharged because he refused to falsify billing documents and to engage in illegal activity.  Ludwick, 337 S.E.2d at 216; see also Dockins v. Ingles Markets, Inc., 413 S.E.2d 18 (S.C. 1992) [State law claim for wrongful discharge available "where the termination is in retaliation for an employee's refusal to violate the law at the direction of his employer"].  The question therefore becomes whether Plaintiff has presented sufficient evidence to give rise to a genuine issue of fact to support this claim.

The only time Plaintiff references evidence relating to this issue in his brief is when he refers the Court to paragraph 9 of his affidavit, wherein Plaintiff discusses the work he did on the Gregerson vehicle, the incident purportedly leading to his discharge.  Plaintiff attests that a four wheel alignment had been ordered on the Gregerson vehicle, but that that type of vehicle could only have the front end aligned, not the rear end.  Plaintiff states that

---

[23]To the extent it would otherwise have been available, Plaintiff's claim under the ADA relating to his HIV status would be subject to dismissal for the same reason.  Honeck v. Nicolock Paving Stones of New England, No. 04-1577, 2005 WL 1388736, at * 2 (D.Conn. June 10, 2005)[public policy wrongful discharge claim not allowed where employee had remedy under the ADA].



> Swaim was charging the customer on the work order for a full four-wheel alignment when only the two front-wheels could be aligned on this type of vehicle. This was a common billing practice at Sears during the thirteen (13) years I worked there....If I complained about a sales representative over-charging the customers I would risk losing my job or be punished in some other manner.

However, there is no indication in this statement that Plaintiff had ever opposed this practice or complained about over-billing customers, or had refused to do so; rather, he just states that if he *had* complained about over-charging customers, he would have risked losing his job. Further, when asked about his dismissal at his deposition, Plaintiff testified that he was told by co-workers that Snowden "couldn't stand" him and that "he [Snowden] was going to get rid of him." Plaintiff's Deposition, pp. 53-54. Again, there is nothing in this testimony to indicate Plaintiff was, or was going to be, discharged because he opposed the Defendant's allegedly illegal or improper billing practices. Indeed, it is readily apparent from both Plaintiff's testimony, as well as the Defendant's evidence, that the reason given for Plaintiff's termination was that he *had* engaged in exactly the conduct he now complains he was fired for *not* engaging in [over-billing or improperly billing a customer (even though Plaintiff denies this)], not that he had complained about doing so or refused to do so. Plaintiff's Deposition, pp. 60-62; Hoit Affidavit, ¶¶ 4-10; Greer Affidavit, ¶¶ 4-10.

Finally, Plaintiff later testified with regard to his public policy claim that "I don't know the formalities of that, but I do know that I have been fired without reason, without cause. I don't know what the regulations say, exactly." Plaintiff's Deposition, p. 77. When asked what facts he had to support his claim that he had been retaliated against by the Defendant, Plaintiff responded: "I'm not sure if the word "retaliation" is the best, but there was a type of vengeance that was vented on me on the part of the person [Snowden] who pushed Sears to push me out." Plaintiff's Deposition, pp. 78-79. Again, no claim is made in this testimony that he had complained about or

33



refused to perform improper billing practices.  In her affidavit, Greer attests that at no time has she ever directed  or ordered employees to charge customers for work that has not been completed or is not necessary, and that such actions are forbidden by the Defendant. <u>See</u> <u>also</u> <u>Brown Affidavit</u>, ¶ 8; <u>Jones Affidavit</u>, ¶ 8; <u>Williams Affidavit</u>, ¶ 8. Greer further attests that Plaintiff at no time ever reported any inappropriate treatment towards him, nor did anyone else report any such treatment towards the Plaintiff. <u>Greer Affidavit</u>, ¶¶ 19, 22. <u>See</u> <u>also</u> <u>Hoit Affidavit</u>, ¶¶ 14 and 15; <u>Snowden Deposition</u>, pp. 41-45.

The undersigned can discern no basis in this evidence for the Court to find that a genuine issue of fact exists as to whether Plaintiff was discharged from his employment for complaining about, or refusing to perform, customer overcharges.  Plaintiff has therefore failed to present evidence to show that he was discharged for refusing to cooperate and/or acquiesce or engage in conduct that would have violated any law, or to show that he was discharged in retaliation for refusing to violate the law.  This claim should be dismissed.

### Conclusion

Based on the forgoing, it is recommended that the Defendant's motion for summary judgment be **granted**, and that this case be **dismissed**.[24]



_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

December 12, 2007

_____

[24]Plaintiff's fourth cause of action should be dismissed without prejudice. <u>See</u> discussion, <u>supra</u>.