# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

# COLUMBIA DIVISION

| | |
|---|---|
| HECTOR M. VACA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SEARS ROEBUCK COMPANY, )<br>d/b/a SEARS, )<br>)<br>Defendant. )<br>_____) | Civil Action No. 3:04-23423-CMC-BM<br><br>**REPORT AND RECOMMENDATION** |

This action was filed by the Plaintiff, a former employee of the Defendant, asserting several claims relating to his employment with the Defendant. By order filed January 16, 2008, the Honorable Cameron McGowan Currie, United States District Judge, granted the Defendant's motion for summary judgment as to all claims.[1] After judgment was entered on January 17, 2008, the Defendant filed a motion seeking fees and costs under 28 U.S.C. § 1927, 42 U.S.C. § 2000e-5(f) [Title VII prevailing party], 42 U.S.C. § 12205 [ADA prevailing party], and 42 U.S.C. § 1988(b) [Section 1981 prevailing party]. Defense counsel seeks $104,734.28 in attorney's fees and $10,226.43 in additional costs.[2]

---

[1] Plaintiff's Fourth Cause of Action was dismissed without prejudice.

[2] These costs are in excess of the costs set forth in Defendant's Bill of Costs filed February 14, 2008. See Court Docket No. 137.

1



This matter was referred to the undersigned by Judge Currie on March 13, 2008. After being granted an extension of time to reply, Plaintiff filed a memorandum in opposition to the motion on March 26, 2008, following which the Defendant filed a reply memorandum on April 4, 2008.[3] As this is a post-trial motion, a Report and Recommendation is required. *Cf.* Blair v. Sealift, 848 F.Supp. 670, 678 (E.D.La. 1994); see also Fed.R.Civ.P. 54(d)(2)(D).

**I.**

This case was hard fought by the attorneys, who unfortunately had difficulty communicating with each other and resolving matters without the Court's intervention. As far back as September 15, 2005, the undersigned issued an order which stated, "[t]he Court strongly urges counsel to cooperate with one another in concluding discovery in this case in an orderly and civil manner. The Court stands ready to assist the parties, where necessary or appropriate, but counsel should first strive to resolve disputes among themselves before bringing such matters to the Court's attention." However, counsel continued to have problems resolving matters and communicating with each other during the remainder of the case.

Although several grounds for relief are outlined by the Defendant in its motion, a significant portion of Defendant's argument centers around its assertion that Plaintiff and Plaintiff's counsel misrepresented that Plaintiff had reviewed the transcript of his first deposition prior to

---

[3]In Defendant's reply memorandum, it argues, inter alia, that Plaintiff's counsel failed to file an affidavit in compliance with an order of the Court of March 5, 2008, and that the Court should therefore disregard Plaintiff's response in opposition to its motion for attorneys' fees. However, as the issue involving that affidavit does not relate to the underlying merits of Defendant's claim for attorney's fees and excess costs, the undersigned has proceeded with a review and analysis of Defendant's request. The question of whether some kind of sanction should be imposed for failure of the Plaintiff to comply with an order of the Court relating to an affidavit is a matter for the District Judge, as is what form any such sanction (if imposed) should take.

2



signing the Errata sheet. Defendant argues that this alleged misrepresentation unreasonably multiplied the proceedings, and that attorney's fees and costs should therefore be awarded as sanctions pursuant to Section 1927.[4] See Reply Brief, pp. 4-12. Plaintiff disputes that he or his counsel misrepresented anything relating to this issue, and both have submitted affidavits in support of their assertions.

The undersigned is well aware of the underlying dispute involving Plaintiff's first deposition, the interpreter for the first deposition (who was not federally certified), and the questionable translation of Plaintiff's first deposition, as Court intervention was required to resolve the matter. See Court Document Nos. 61-62, 66-82, 86-87, 92, 94. This issue was also presented to the District Judge by the Defendant in an appeal. See Court Document Nos. 93, 95, 97, 99. The record reflects that Plaintiff returned the errata sheet to defense counsel with a letter stating that Plaintiff's counsel had concerns about the translation of Plaintiff's deposition. See also, Court Docket No. 77. Because of the dispute over whether the translation of Plaintiff's first deposition was accurate, a federally certified interpreter was appointed by the undersigned to review the transcript and issue a report. See Court Document No. 78. On January 26, 2007, the federally certified interpreter filed a report with the Court, noting "some 34 instances of errors, omissions, additions, and mistranslations that cast doubt on the accuracy of this interpreted deposition as a whole. I have only cataloged the most egregious errors that definitely caused confusion. There were additional errors that did not rise to the level of "mistranslation", but could be categorized as 'poor, imprecise,

---

[4]Section 1927 provides:
> Any attorney or other person...who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

3



inadequate or non-standard usages.'" See Court Document No. 79. After reviewing this report and receiving argument from counsel, the undersigned issued an order which held, in part, that "[b]ased on the interpreter's report and filings, the entire transcription is generally unreliable. Therefore, the Court finds that the deposition transcript submitted to the Court may not be considered in support of Defendant's motion." See Court Document No. 87. Subsequent to the issuing of that order, the matter was considered on a motion to reconsider [Court Document No. 92] and on appeal to the District Judge [Court Document No. 93]. These motions were denied. See Court Document Nos. 94 and 95. On March 23, 2007, the Defendant filed a motion asking the District Judge to reconsider her ruling [Court Document No. 97]. After granting the motion to reconsider and reconsidering the matter, the District Judge again denied relief. See Court Document No. 99.

As the history of these filings demonstrate, the incurring of attorney's fees and costs relating to this issue was not the result of any alleged misrepresentation concerning the errata sheet from the Plaintiff's first deposition. Rather, these costs and fees were incurred as part of the process of determining the validity of the transcript from that deposition. As noted, the transcript was found generally unreliable, as was initially claimed by the Plaintiff. See Court Document No. 87. This ruling was not dependent on any representation by the Plaintiff, and was made only after a court-appointed federally certified interpreter reviewed the transcript and reported to the Court. Further, it is readily apparent that a significant portion of the fees and costs incurred by the Defendant was due to Defendant's own decision to continue to contest this issue after the Court's initial ruling. Although Defendant certainly had this right, its decision to do so was its own. Plaintiff bears no responsibility for this decision. Therefore, the Defendant's contention that Plaintiff's alleged misrepresentation unreasonably multiplied and extended these proceedings is without merit, and the



Defendant is not entitled to any attorney's fees or additional costs based on this argument.

## II.

Defendant also argues that it is also entitled to attorney's fees under Section 1927 because the Plaintiff continued to pursue frivolous claims after the filing by the Defendant of its initial motion for summary judgment. Again, the undersigned disagrees. For the Court's convenience, the factual background and evidence from this case, including relevant footnotes and citations to the record, previously set forth in the report and recommendation entered on December 12, 2007 is set forth below:

> Plaintiff is a Hispanic male, originally from Equador, whose primary language is Spanish. Plaintiff began working in the Defendant's automotive department in 1991 and remained employed by the Defendant until September 30, 2003. At the time of Plaintiff's discharge, he was a Level III Automotive Technician at the Defendant's Columbiana Mall Auto Center. Plaintiff was one of several employees who worked primarily on wheel alignments, two of the other employees being Scott Jones (Caucasian) and Amos Hall (African-American).
>
> During the time period relevant to Plaintiff's claims, Toussaint Snowden was the Manager at the Sears Automotive Center, and Tim Swaim was Assistant Manager. Snowden Deposition, p. 11; Swaim Deposition I, p. 26. The General Manager for the Defendant's Columbiana Mall store was Betty Greer, while the District Auto Center Manager (which included the Columbiana Mall store) was Andrew Hoit. Greer Affidavit, ¶ 2; Hoit Affidavit, ¶ 1.
>
> While Plaintiff could generally understand work orders, since he was not fluent in English he had difficulty communicating with customers and other employees. Nevertheless, he was generally considered to be a good employee. Snowden Deposition, pp. 49, 53, 66; Greer Deposition, p. 34; Counts Deposition, p. 18.[footnote omitted]. Even so, Plaintiff attests that Snowden harassed him about not being able to speak English, and that Snowden as well as fellow employees Ronnie Jones and George Williams (both African-Americans) called him "fag" and "queer". Plaintiff's Affidavit, ¶ 10.[5] However, Plaintiff never complained to Swaim, Greer

---

[5] Plaintiff attests that he was diagnosed as HIV positive in 1998, and that he started being called "fag" and "queer" at work after he began receiving treatment for this condition in 1999. Plaintiff's Affidavit, at ¶ 10.

5



or anyone else in management about this alleged treatment. Plaintiff's Affidavit, ¶ 10; Greer Deposition, p. 19.[6]

On September 19, 2003, Hoit reported to Greer that Plaintiff had attempted to improperly charge a customer for a wheel alignment on September 17, 2003. Greer Affidavit, ¶ 5. This customer was Alison Gregerson. Greer Deposition, pp. 84-85; see Gregerson Deposition, pp. 4-7. A few months earlier, Plaintiff had also performed work on a vehicle owned by Kimberly Repp, who apparently was a friend of Hoit. Repp did not feel this work had been done properly, which angered Hoit. Snowden Deposition, pp. 27-31. Snowden testified that the Repp work was the reason Plaintiff was terminated, because his work had embarrassed Hoit in front of his friends. Id. Conversely, while Greer attests that Hoit had discussed this previous incident with her, she states that Plaintiff was actually terminated for the Gregerson incident. Greer Affidavit, ¶¶ 6-10; Greer Deposition, pp. 84-85. Greer attests that, after concluding her investigation, she determined that Plaintiff had acted improperly and made the decision to discharge Plaintiff from his employment. Greer Affidavit, ¶ 10. Plaintiff denies that he did anything wrong when working on the Gregerson vehicle. Plaintiff's Affidavit, ¶¶ 8-9.

On June 4, 2004, Plaintiff filed a charge of discrimination with the South Carolina Human Affairs Commission (SCHAC) alleging that he had been discriminated against on the basis of his national origin and a disability.[7] Plaintiff's Deposition, Defendant's Exhibit 5. In this administrative charge, Plaintiff claimed that he was harassed and intimidated by Snowden, including being cursed and yelled at and called derogatory names, because of his disability and because he did not speak English well, and that he was also given menial jobs and had his hours lowered so

---

[6]Plaintiff does argue in his brief that he had "sought management intervention through Swaim many times, complaining of his treatment by Snowden", but that Swaim would simply refer Plaintiff's complaints back to Snowden, citing to page 19 of Swaim's deposition. However, that page of Swaim's deposition does not contain any testimony indicating that Plaintiff ever complained to Swaim about Snowden or anyone else harassing him because he could not speak English or because he was being referred to as a "fag" or "queer". Rather, Plaintiff's complaint to Swaim was that Snowden was sending him too much warranty work, which prevented him from receiving a commission. Swaim Deposition, pp. 19-21.

[7]It is undisputed that South Carolina is a deferral state, and that the Plaintiff could therefore file his administrative claim with SCHAC. Nelson v. Lockheed Missiles and Space Co., No. 97-1430, 1997 WL 727609 at **1 n. 1 (4th Cir. November 24, 1997); E.E.O.C. v. Hansa Products, Inc., 844 F.2d 191, 192 n. 1 (4th Cir. 1988) (quoting 42 U.S.C. § 2000e-5(e)) ["A deferral state is one 'which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice.'"]; see S.C.Code Ann. § 1-13-90, et. seq., as amended.

6



> that he could not earn a full salary. In addition to this harassment, Plaintiff alleges that he was terminated because of his national origin and because of his disability. See also Plaintiff's Deposition, Defendant's Exhibits 6 & 7.
>
> After receiving a right to sue letter, Plaintiff filed this action in United States District Court on December 29, 2004 alleging that he had been discriminated against by the Defendant on the basis of his national origin and disability by being paid less than similarly situated non-Hispanic employees and by receiving lower raises than similarly situated employees in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq.; 42 U.S.C. § 1981, and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et. seq. (first cause of action); that he was subjected to a hostile work environment because of his national origin and illness in violation of Title VII and § 1981 (second cause of action); that he was retaliated against for opposing discriminatory practices by being paid less than other similarly situated employees, offered lower raises, and by being harassed and terminated without just cause in violation of § 1981 and Title VII (third cause of action); that the Defendant breached his employment contract (fourth cause of action); and that he was wrongfully discharged in violation of state law (fifth cause of action).

See Report and Recommendation, pp. 2-5 [Court Document No. 124].

As previously noted, after Defendant's initial motion for summary judgment was filed, the dispute regarding the accuracy of the Plaintiff's deposition was brought to the Court's attention. After that matter was briefed and reviewed as fully discussed above, Plaintiff's first deposition transcript was found to be generally unreliable. See Court Document No. 87. After making that finding, the Defendant was given the choice of having the Court consider its motion for summary judgment without the use and consideration of Plaintiff's deposition transcript, or the Defendant could redepose the Plaintiff and then resubmit a motion for summary judgment after receiving a transcript of the new deposition. See Order of the Court filed February 26, 2007 [Court Document No. 04-23423]. The Defendant decided to redepose the Plaintiff and submit a new motion for summary judgment, and after receiving the Plaintiff's response and the Defendant's reply memorandum, the undersigned issued the report and recommendation cited hereinabove recommending that summary judgment be granted. The Plaintiff did not file any objections to the

7



report and recommendation, and on January 17, 2008, the District Judge entered summary judgment for the Defendant.

After careful review of Defendant's Motion for Attorney's Fees, the case history as set forth hereinabove, and based upon the undersigned's analysis of the Plaintiff's claims as set forth in the 34 pages of the recommendation for summary judgment, the undersigned does not find that the Plaintiff's continued pursuit of his claims after the filing of Defendant's initial motion for summary judgment was so unreasonable and vexatious as to warrant an award of attorney's fees. Although the Court granted Defendant's summary judgment motion, that does not mean that Plaintiff's claims were so frivolous that it should be considered unreasonable for Plaintiff to have even pursued them. Plaintiff filed a 37 page memorandum opposing Defendant's motion together with numerous exhibits, and it took the undersigned 34 pages to fully address Plaintiff's claims. Further, the record reflects that much of the time and effort spent by the Defendant after the initial summary judgment filing had to do with Defendant's motions and appeals regarding the Plaintiff's deposition, on which the Plaintiff was the prevailing party. Therefore, the Defendant is not entitled to an award of attorney's fees and excess costs incurred during that time under Section 1927.

**III.**

Finally, the Defendant also moves for attorney's fees under 42 U.S.C. § 2000e-5(f) [Title VII prevailing party], 42 U.S.C. § 12205 [ADA prevailing party], and 42 U.S.C. § 1988(b) [Section 1981 prevailing party]. Prevailing defendants are awarded their attorney's fees under these statutes only if the court finds that a plaintiff's action was "frivolous, unreasonable, or without foundation", and in evaluating such a claim the Court is not to "engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been

8



unreasonable or without foundation." See Christiansburg Garment Co. V. E.E.O.C., 434 U.S. 412, 421-422 (1978). As noted by the Court in Christiansburg, "[t]his kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success . . . . Decisive facts may not emerge until discovery or trial." Id. at 422.

Awarding fees against an unsuccessful Plaintiff is a "conservative tool, to be used sparingly;" Arnold v. Burger King Corp., 719 F.2d 63, 65 (4th Cir. 1983), cert. denied, 469 U.S. 826 (1984); with a recognition of "the chilling effect such awards can have on Title VII plaintiffs." Glymph v. Spartanburg General Hospital, 783 F.2d 476, 479 (4th Cir. 1986). As discussed above, the undersigned does not find that the Defendant has shown that Plaintiff's claim was so frivolous, unreasonable, or without foundation as to warrant an award of attorney's fees. See discussion, supra. Therefore, Defendant's request for an award of attorney's fees under 42 U.S.C. § 2000e-5(f) [Title VII prevailing party], 42 U.S.C. § 12205 [ADA prevailing party], and 42 U.S.C. § 1988(b) [Section 1981 prevailing party] should be denied. It is also recommended that Defendant's request for costs in excess of its Bill of Costs be denied.

**Conclusion**

Based on the foregoing, it is recommended that Defendant's motion for attorney's fees and excess costs be **denied**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

May 16, 2008

